relator to devote a portion of its premises to a profitable use, when they are not needed and cannot be used by its own members. By renting the theater, the relator is enabled to increase its income applicable to the purposes of its creation, and to afford to the people of Albany a commodious and well-appointed place of amusement. If the exemption from taxation enables it to obtain a larger net income, it is an advantage to which it is fairly entitled, and which is entirely consistent with the policy upon which the exemption is based. Not only is this the recognized rule here, but in other states, cultivating a broad and liberal policy towards the young, the indigent, and the infirm. Seminary v. Cramer, 98 N. Y. 121, 126; In re Vassar, 127 N. Y. 1–15, 27 N. E. 394; People v. Murray, 148 N. Y. 171–176, 42 N. E. 584; People v. Murray, 5 App. Div. 441, 38 N. Y. Supp. 609, and 39 N. Y. Supp. 1130; Toole v. Board of Sup'rs, 13 App. Div. 471, 37 N. Y. Supp. 9, and 43 N. Y. Supp. 1160; People v. Commissioners of Taxes of New York, 6 Hun, 109, affirmed 64 N. Y. 656; Bank v. Carpenter, 119 N. Y. 550, 23 N. E. 1108; Philadelphia v. Women's Christian Ass'n, 125 Pa. St. 572, 17 Atl. 475; County of North Hampton v. Lafayette College, 128 Pa. St. 132, 18 Atl. 516; Gooch v. Association, 109 Mass. 558; McDonald v. Hospital, 120 Mass. 432; Town of New Haven v. Sheffield Scientific School, 59 Conn. 163, 22 Atl. 156; Willard v. Pike, 59 Vt. 202, 9 Atl. 907.

In reaching this conclusion, I am not unmindful that taxation is the rule, and exemption the exception, and that an intent to exempt property from taxation is not to be presumed; but the true rule is that statutes such as this should be construed, not narrowly by the letter, but liberally and broadly, in view of their object and spirit; and the advantages to be derived from a generous construction will be more than an equivalent to the state and the city of Albany for the loss that may result from the relinquishment of the right of taxation over the property owned by such organizations as the relator, and devoted to kindred purposes. Nor will the state or city suffer by such a construction, as it may safely be assumed that assessors and the courts will scrutinize each case as it arises, and see that a salutary and benignant law is not perverted to base ends. I am of the opinion that the assessment is illegal and erroneous, and should be stricken from the roll. An order to that effect may be framed, and, if counsel disagree as to its provisions, it will be settled by me on two days' notice.

(26 App. Div. 255.)

### ADAMANT MFG. CO. OF AMERICA v. BACH.

(Supreme Court, Appellate Division, First Department. February 18, 1898.)

1. CONSTRUCTION OF CONTRACT—QUESTION FOR JURY.

Plaintiff made an informal agreement with defendant, without specifications, to "plaster your seven-story building, according to plans furnished us by your architect, for $5,000." In an action to foreclose a mechanic's lien it appeared that plaintiff had not plastered the basement or a certain bulkhead, and the question was whether the contract required him to do so. *Held*, that the answer depended on what the plans, as furnished, called for, and that on the evidence the case was properly left to the jury.

2. CUSTOM—EVIDENCE.
    Evidence offered by defendant of a custom in the building trade respecting what was covered by the expression "a seven-story building" was excluded. *Held* no error, that expression being qualified in the agreement by the words "according to plans furnished."
    Barrett, J., dissenting.

Appeal from special term, New York county.

Action by Adamant Manufacturing Company of America against Lewis Z. Bach and others to foreclose a mechanic's lien. From a judgment in favor of plaintiff, defendant Bach appeals. Affirmed.

The lien was filed by the plaintiff for work and materials furnished under contract with the defendant Bach, the owner of an apartment house at Park avenue and Eighty-First street, in the city of New York. The contract was an informal one, consisting of a letter written by the plaintiff, and accepted by the defendant Bach, by which the former agreed that it would "plaster with adamant wall plaster your seven-story building at Park avenue and Eighty-First street, according to plans furnished as by your architect, * * * for the sum of five thousand dollars." The plaintiff alleged and sought to prove a full and complete performance. The defendants, on the other hand, insisted that the plaintiff had omitted to plaster the basement and the bulkhead of the building, and that a large portion of the work performed was done in an unworkmanlike and unskillful manner. The reasonable value of plastering the bulkhead was $20, and of plastering the basement was from $350 to $400. The court found that the plaintiff performed its contract, and that it did not contract to plaster either the basement or the bulkhead.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Frank Avery, for appellant.
Edward C. Perkins, for respondent.

O'BRIEN, J. The points presented by the appellant are: (1) That the court erred in holding that under the contract the plaintiff was not required to plaster the basement and bulkhead; (2) that by reason of the omission to plaster those parts of the house the plaintiff failed to prove a substantial performance; and (3) exceptions to rulings made excluding evidence of usage or custom in the building business in regard to plastering the basement and bulkhead in a seven-story apartment house. The contract was to plaster "your seven-story building * * * according to plans furnished us by your architect," and the crucial question litigated upon the trial and to be disposed of on this appeal is as to what plans, if any, were furnished by the architect, and whether, in the plans so furnished, the basement and bulkhead were included. Were it not for the language in reference to the furnishing of plans, we should be inclined to adopt the appellant's construction that the words "seven-story building" were intended to designate the building to be plastered, and not to specify or limit the extent of plaster to be used in the building, and that under such agreement the plaintiff was obliged to do all the plastering necessary and proper to complete this particular building. But this, as we have pointed out, was modified and limited by the statement that the work was to be according to plans furnished, from which we are to infer that plans were furnished; and the point to be determined is, what did the plans, if furnished, call for? The testimony on both sides showed that at the time the contract was made only one plan had been delivered

to the plaintiff by the defendant or the defendant's architect; and a blue print of this plan appears in the appeal book, marked "Exhibit A," and entitled, "Sec. 2–3–4–5–6–7 stories." The architect, Knubel, testified that he showed the plaintiff's employé Strang a full set of plans, including a plan of the basement; but he does not claim that any such plans were ever furnished. So we are relegated to what occurred between Knubel and Strang, who was the one in the first instance representing the plaintiff, and who had the conversation with the architect, as to what the contract for plastering was to embrace. On the one side we have the fact that the plan furnished did not include the basement or bulkhead, and in fact did not include the first story. But this latter was done by the plaintiff, presumably as the result of agreement, there being no disposition shown on the part of the plaintiff, so far as we can find from the record, to do any more than it was required by its contract. The plaintiff's claim being that the plans given to Strang or to the plaintiff's manager, Goddard, were the only set of plans that was actually furnished them, and having in view in addition the testimony of the architect that he showed them a set of plans which included the first floor, and also the basement, we have then a conflict arising—because it is conceded that the plaintiff understood that it was to plaster, and actually did plaster, the first story—as to how much of the plastering appearing on the full set of plans the plaintiff was to do. Strang's version of the interview is as follows: "I said to Mr. Knubel, 'What about the basement?' Mr. Knubel answered me, 'There will be no plastering in the basement.' I then took the plan with me. There was no bulkhead ever mentioned to me at any time, either then or ever afterward. I gave that plan to Mr. Goddard." The architect's testimony is that, upon showing Strang the full plans, including the basement, and offering to give them to him, he said it was unnecessary for him to take them, as one plan was sufficient; and the architect admits that Strang was particular to know just what there was in the basement, and that he made the one plan showing the stories other than the first one and the basement, which Strang took away, but states, with reference to what portion of the basement was to be plastered, that he told Strang the entire ceiling was to be done. It appears, however, that Mr. Goddard, the plaintiff's manager, who made the contract, testified that he figured his estimates from the plan furnished him (Exhibit A), and that he never saw the building before the signing of the contract. And with respect to the bulkhead we find an equal conflict between the testimony of the architect and Strang as to what was said about plastering it. Taking the letter, therefore, which constituted the contract, it cannot be said as matter of law that it calls for the plastering of the bulkhead and basement, because it was not to plaster the building, but, as already pointed out, to plaster it "according to plans furnished us by your architect." Thus the question turned upon what was said between the parties in regard to the portions of the building in dispute. We do not think that this conflict so clearly preponderated in the defendant's favor that we would be justified in reversing the judgment on the grounds that the conclusion reached by the trial judge was against the weight of evidence.

Nor do we think it was error to exclude the evidence offered as to the custom in the building trade respecting what was included in the expression "a seven-story building." These .questions were directed to eliciting what, according to the custom of the trade, is meant by "a seven-story building"; but the contract, in addition, stated that the work was to be done "according to plans furnished," and it certainly was not proper to omit this latter, which was an essential part of the agreement, because it would be an attempt to vary what was written by taking the expression "seven-story building" away from the connection in which it was used, and the modification attached to it. Besides, the contract not being formal, and no specifications having been furnished, and, therefore, it not being in itself complete, both sides conceded that it was open to oral explanation as to just what was meant by the parties to the contract. As to this there was a clean-cut question whether or not the basement and bulkhead were included in the plans furnished. It therefore would not depend on what was the meaning of a seven-story building according to the custom or usage of the trade, but upon what the work was which the plaintiff agreed to do pursuant to the plans furnished. We think, therefore, that it was not error to exclude such evidence.

The judgment should be affirmed with costs.

VAN BRUNT, P. J., and RUMSEY and PATTERSON, JJ., concur.

BARRETT, J. (dissenting). I am unable to agree with Mr. Justice O'BRIEN in .this case. The contract was to "plaster your seven-story building   *   *   *   according to plans furnished us by your architect," etc. The words, "We will plaster your seven-story building," must, standing alone, be held to include the work on the basement and bulkhead. Either these words of themselves import an agreement to plaster the building throughout, or else to plaster it in the usual manner; that is, to put plaster wherever it properly belonged. If the former, then the plaintiff failed to perform his contract. If the latter, then it was reversible error to exclude the defendant's evidence of the custom. Hence the only question to be considered is the effect of the following words, "according to plans furnished us by your architect." Their meaning seems clear. They relate to the details of the work, not to the quantum. "According" does not mean "to the extent that." The plans were to guide and assist the plaintiff, either in plastering the building throughout or in plastering it in the usual manner. If any existing feature of the work was omitted from the plans furnished, the plaintiff should, if it desired them, have requested additional ones. It did not, because of any omission in the plans, become absolved from performing in full. This is made clear if we paraphrase the first words of the agreement standing alone, according to their conceded meaning. Thus let us assume that the letter had read, "We will plaster the seven stories and basement of your building in the usual manner, according to plans furnished us by your architect." Could it be plausibly contended, in such a case, that the architect's failure to

deliver full plans absolved the plaintiff from full performance? Clearly not. The plaintiff's contention leads to serious difficulties, which are illustrated in Mr. Justice O'BRIEN'S opinion. Suppose the architect had offered the plaintiff full plans, but the latter did not choose to accept them, saying it did not need them. What then? Could the plaintiff thus escape the consequences of nonperformance? Such an idea shocks the moral sense. Hence a somewhat more equitable ground is taken, and it is said that the plaintiff was only absolved from doing that part of the work which the architect said need not be done, and for which, therefore, he furnished no plans. There was, in fact, an issue on this head as to what the architect actually said and did. But this issue resulted solely from an unwarrantable construction of the contract. That construction distorts the contract so as practically to make a new one, turning it into an agreement to do that portion of the work upon which the architect and the plaintiff's representative had mutually agreed, or upon which they should agree. The defendant, however, made his own contract. He did not leave it to the architect, and there is no proof of the latter's authority to bind him in any such manner. The true construction of the contract is fortified by an additional circumstance, which is quite controlling. The plans furnished did not include the first story any more than the basement, yet the plaintiff did the work thereon. Mr. Justice O'BRIEN accounts for this by the suggestion that, as the plaintiff evinced no eleemosynary spirit, some undisclosed agreement to plaster the first story must be presumed. It would be a strange rule that the plaintiff, by its action or nonaction, could create its own presumptions,—a presumption that it agreed in some way to do what it did, but that it could not have agreed to do what it did not. The fact is that the only agreement, express or implied, of which there is any pretense, is that contained in the letter of September 10, 1895; and the plaintiff's act is a clear admission that the construction necessary to support his judgment is not the correct one. The doctrine of practical construction of a contract is plainly controlling against him.

I think the judgment should be reversed, and a new trial ordered.